MARGARET McCUE, administratrix, *vs.* BOSTON ELEVATED
RAILWAY COMPANY.

Suffolk.    March 23, 24, 1915. — June 21, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Negligence,* Street railway.    *Evidence,* Of customary practice.

At the trial of an action of tort by an administrator against a street railway com-
pany for causing the death of a workman in a wide street in a city, which
ran easterly and westerly and had a place in the middle reserved for the de-
fendant's tracks, there was evidence tending to show that for about a month
before the accident the plaintiff's intestate and others had been employed in
resurfacing one side of the street at a point where it was straight and there was
an unobstructed view for half a mile, that during that entire time the workmen
necessarily were engaged in their tasks upon, beneath and around the defend-
ant's tracks and that it had become customary for the defendant's cars in en-
tering the area of repairs from the west to be run slowly and to have their gongs
sounded continuously; that the plaintiff's intestate in the course of his du-
ties just had driven a team across the defendant's tracks from one side to
the other of the street, had left his team, had returned in the course of his
duties to straighten some planks placed near the tracks to make the progress
of teams easier, and had stooped down in arranging the planks, when his head
was struck by a street car which passed at the rate of about twenty-two miles
an hour and of the approach of which no sound of warning was given, that the
motorman when two hundred feet distant saw the intestate two or three feet
from the track but did not begin to lessen the speed of the car until he was four
seconds distant from him, and that, when twenty feet from him, the motor-
man saw the intestate, who was looking at the car, step back eighteen to
twenty inches. *Held,* that there was evidence that the intestate was in the
exercise of the due care required by St. 1907, c. 392, as a condition prece-
dent to recovery and that the motorman was negligent.

At the trial of the action described above the evidence as to the practice of the
defendant of running its cars slowly and of striking the gong continuously while
passing through the area where repairs were being made was admissible, not
only to show how the cars were run, but also to show that the intestate knew of
the usual method and presumably governed his conduct accordingly.

TORT for causing the death of the plaintiff's intestate, Michael
McCue, on July 9, 1912, on Commonwealth Avenue in Boston.
Writ dated September 9, 1912.

In the Superior Court the case was tried before *Sanderson,* J.
The material facts and the exceptions of the defendant are stated
in the opinion.    The jury found for the plaintiff in the sum of
$6,240; and the defendant alleged exceptions.

*J. T. Hughes,* for the defendant.

*J. P. Walsh,* (*C. J. Muldoon, Jr.,* with him,) for the plaintiff.

PIERCE, J.  Culling from the evidence only such facts and inferences of fact or facts as tend to establish or to give credibility to the plaintiff's contention that his intestate was killed through the defendant's negligence while he was in the exercise of statutory due diligence (*Vahey* v. *Bigelow,* 208 Mass. 89, 92), it might have been found that at the time of the accident resulting in the intestate's death workmen were and for a month had been engaged in resurfacing the southerly side of Commonwealth Avenue from a point between Beacon Street and the synagogue to Cottage Farm, a straight course of half a mile with an unobstructed view.  In the process of repair trenches and ditches were being dug in the gutter beside the southerly rail of the inbound track at places beneath that track and on the reservation between the two sets of tracks.  The work was being prosecuted at the same time over the entire distance, and workmen were engaged in the performance of their several tasks around, upon and beneath the tracks.  During the progress of the work, before this accident, it had been the general practice of motormen to run their cars slowly after leaving Cottage Farm Bridge, and to strike the gong, "Bang, bang, right straight along."

The car that struck the intestate was run at the rate of twenty-two to twenty-four miles an hour and its gong was not rung. Teams in the delivery of their loads came in on the northerly side of the avenue and were unloaded at designated places on the southerly side.  The intestate brought in his load and crossed the tracks from the northerly side to the southerly side of the avenue at a crossing "for foot passengers and teams."  Dumping the load, he drove the team back to the northerly side and left it.  Returning to the southerly side he proceeded to readjust a plank which his team in passing over had forced from its position by the side of the southerly rail of the inbound track. When in position this plank was eighteen inches from the rail and served to bridge a drop of six inches between the rail and paving.  While thus engaged, stooping over near the rail, his head was struck by the swiftly moving car from which no sound of warning had come.

The evidence fully warranted the submission of the question

of the defendant's negligence to the jury, and as a common law proposition was equally adequate to justify a jury in finding that no negligent act of the intestate contributed to his harm. The jury also would be justified in finding that the intestate was affirmatively in the exercise of due care, or, otherwise stated, was diligent in self protection against the negligent acts of the defendant. In determining what he should have done we must consider that he had the right to assume on humanitarian grounds that the motorman would not wilfully or recklessly run him down; that he had the right to rely upon the known practice at that place to run the car slowly and to ring the gong where men were seen to be engaged upon, about, or under the track. In the case at bar the motorman saw the intestate near the track, two or three feet away, when the car was two hundred feet distant. He did not start to slow down until the car was one hundred feet away, or, stated in terms of time, less than four seconds distant. When twenty feet away he saw the intestate, who was looking at the car, step back eighteen to twenty inches; he (the motorman) "thought the man was safe," and that there was no necessity to slow down the car.

Upon the defendant's showing, the case at bar ·was not one where there is no evidence of due diligence, but is one where the degree of self care was properly submitted to the jury. The case is distinguishable from *Dwyer* v. *Boston Elevated Railway,* 220 Mass. 193, and cases therein cited in that in the case at bar the intestate saw the approaching car and stepped back to avoid it; and is like *Santore* v. *New York Central & Hudson River Railroad,* 203 Mass. 437, and *Hanley* v. *Boston Elevated Railway,* 201 Mass. 55. The evidence to which exception was taken was admissible, not alone to show how the cars were in fact run, but to show that the intestate knew of the usual method and presumably governed his conduct accordingly. *Hines* v. *Stanley G. I. Electric Manuf. Co.* 203 Mass. 288.

The exception was a general one and must be overruled. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 384.

*Exceptions overruled.*