EZILA C. DOCANTO & another[1] *vs.* AMETEK, INC.

Suffolk. December 6, 1974. — May 20, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Negligence,* Manufacturer, Laundry machine, Duty to warn. *Evidence,* Pre-accident safety improvements. *Practice, Civil,* Requests, rulings and instructions, Judicial discretion, New trial. *Damages,* For tort.

At the trial of an action for personal injuries sustained while the plaintiff was operating an electric commercial laundry ironing machine sold to her employer, evidence of safety features developed by the defendant manufacturer after the sale but before the accident was properly admitted to demonstrate the feasibility of redesign of the machine's safety features, to show the defendant's knowledge of inadequacies in its "existing safety features," and to establish a duty of the defendant to warn purchasers of the machines of any deficiency in safety features. [779-782]

In an action for personal injuries sustained while operating a machine, the defendant manufacturer's concession in a general way that safety design improvements were practical did not render inadmissible evidence of improved safety design offered by the plaintiff on the question of the feasibility thereof. [780-781]

At the trial of an action against the manufacturer of an electric ironer sold to the employer of the plaintiff for injuries sustained when her hand was pulled under a safety bar and into the machine by the overtravel of its rollers, submission of the case to the jury on the questions of negligent design and of negligent failure to warn, without expert testimony, was warranted by

---

[1] The other plaintiff is Justiniano M. doCanto (Justiniano), husband of Ezila.

the evidence, particularly that the defendant never advised the plaintiff's employer of the known danger of overtravel and made incorrect statements with respect thereto. [782-783]

At the trial of an action against the manufacturer of an electric ironer for injuries sustained by the plaintiff when her hand was pulled into the machine, where there was evidence that the plaintiff's hand was unusually small but not abnormal in size, and the judge instructed the jury as to "foreseeable risk" of danger to a person such as the plaintiff "as you find her to be," there was no error in refusing an instruction concerning the defendant's lack of liability to a person whose characteristics departed from its reasonable expectations [783-784]; nor was there error in refusing an instruction concerning the written standards of a safety code the meaning of which was a disputed question of fact [784-785].

In an action against the manufacturer of an electric ironing machine sold to the employer of the plaintiff for personal injuries sustained when her hand was pulled into the machine, where there was evidence that the machine was negligently designed and its braking capacity misrepresented by the defendant, there was no error in the trial judge's charge on the duty to warn, and no error in refusing an instruction that the defendant "was under no duty to inform purchasers of its machines of any facts regarding changes or improvements it later decided to incorporate in the manufacture of similar machines." [783-785]

Where it was not shown in a civil action that the trial judge made any rulings of law in denying posttrial motions raising matters of discretion, there was no error in denial of the motions. [785-787]

There was no abuse of discretion in denial of a motion for a new trial grounded on a claim that the verdict of $440,000 for the plaintiff wife was excessive where it appeared that her right hand was pulled into an electric commercial laundry ironer and she lost four fingers and was unable to perform household tasks or to obtain further employment. [787-788]

TORT. Writ in the Superior Court dated April 9, 1970.

The action was tried before *Lynch,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Robert W. Cornell* (*John B. Johnson* with him) for the defendant.

*Paul R. Sugarman* (*David J. Sargent* & *Charles E. Blumsack* with him) for the plaintiffs.

WILKINS, J.   The defendant, a manufacturer of ironing machinery used in commercial laundries, argues various exceptions arising out of a trial which resulted in verdicts for the plaintiffs aggregating $467,000.[2]

On July 16, 1968, Ezila C. doCanto (Ezila) was one of two operators of a "Troy Speedline 8 Roll Flat Work Ironer" at the Boston premises of Hospital Laundry Association, Inc. (Laundry).   The defendant, Ametek, Inc. (Ametek), had sold the ironer to Laundry and installed it in the latter part of 1961.   Ezila's job was to put sheets into the ironer from one side, while another operator did so on the other side.   As she was feeding a sheet into the ironer that day, her right hand, caught in a sheet, was pulled into the ironer under a safety bar. Although the electricity which powered the ironer shut off when her hand activated the safety mechanism, the momentum of the rollers in the ironer caused her hand to be pulled farther into the machine.   The coasting of the machine after the electricity has been shut off is described as overtravel, can be measured in inches and varies with the circumstances, particularly the speed at which the rollers were operating.   At the time of Ezila's injury the ironer was operating at its maximum speed, 115 feet a minute.   Ezila sustained serious injuries from the heat and pressure of the ironer.   Subsequently she lost all of her fingers, except her thumb, and underwent four operations during about eight weeks of hospitalization.

Ametek's challenges to various rulings at trial can be grouped into the following categories: (1) The judge admitted, for limited purposes, evidence of changes in the design of the ironer by Ametek after the sale to Laundry, but before the accident.   The judge (2) denied Ametek's

---

[2] The first count, on which the verdict was $440,000, was based on a claim for personal injuries to Ezila.   The second count, on which the verdict was $7,000, was brought by Justiniano for consequential damages.   On the third count, brought by Justiniano for loss of consortium, the verdict was in the amount of $20,000.

motion for directed verdicts, and (3) refused to give several of Ametek's requests for instructions. (4) The judge declined to grant a new trial (or to revoke his order allowing a count for loss of consortium), rejecting Ametek's argument that our opinion in *Diaz* v. *Eli Lilly & Co.* 364 Mass. 153 (1973), denies recovery on any such claim in these circumstances. (5) Finally, Ametek argues that, because of the excessiveness of the $440,000 verdict in favor of Ezila, the judge should have granted a new trial. Facts relating to each area of contention will be set forth in the relevant discussion below.

1. Evidence of safety features developed by Ametek after the sale of the ironer to Laundry and before Ezila's injury properly was admitted for limited purposes. These design improvements principally involved (a) the addition of a device which reduced the overtravel of the ironer after activation of the safety mechanism, and (b) the relocation of the safety bar farther from the point at which an operator's fingers would be pinched by the pressure rolls of the ironer. The judge allowed evidence of post-sale safety improvements for three purposes: (1) to demonstrate the feasibility of redesign of the machine's safety features; (2) to show Ametek's knowledge, if any, of inadequacies in the "existing safety features" of the ironer; and (3) to establish Ametek's duty, if any, to warn purchasers of the ironer of any deficiency in the ironer's safety features. The judge instructed the jury that the evidence of safety improvements "is not in and of itself any evidence of negligence."

Ametek argues that evidence of pre-injury improvements "should be considered in the same light as evidence of subsequent improvements or repairs." The theory behind the general rule which excludes evidence of post-accident improvements as evidence of negligence rests in considerable degree on the belief that a contrary rule would discourage owners from making repairs to dangerous property. Wigmore, Evidence, § 283 (3d ed. 1940).

Without accepting Ametek's premise that evidence of pre-accident safety improvements should be treated the same as evidence of post-accident improvements, we note that evidence of a post-accident improvement may be admissible, in the judge's discretion and subject to limiting instructions, on a variety of other issues in a case. See Wigmore, Evidence, § 283, p. 158 (3d ed. 1940); McCormick, Evidence, § 275, pp. 666-669 (2d ed. 1972); Leach and Liacos, Massachusetts Evidence, 201 (4th ed. 1967). See also Federal Rules of Evidence, Rule 407, 28 U. S. C. App. (Supp. V, 1975) (as enacted by P. L. 93-595, January 2, 1975, effective July 1, 1975).

This court has permitted the introduction of evidence of post-accident safety improvements for several purposes. For example, evidence of such a change is admissible to prove the practical possibility of making a safety improvement. See *Beverly* v. *Boston Elev. Ry.* 194 Mass. 450, 458 (1907); *Coy* v. *Boston Elev. Ry.* 212 Mass. 307, 309-310 (1912). Likewise, evidence of such a safety improvement may be admissible on the issue whether the defendant knew or should have known of the danger at the time of the plaintiff's injury. See *Reardon* v. *Country Club at Coonamessett, Inc.* 353 Mass. 702, 704-705 (1968). It is clear, therefore, that on the issues of feasibility and knowledge of the risk, two of the three grounds on which the judge admitted evidence of pre-accident safety improvements, post-accident evidence would have been admissible in his discretion. We see no reason why evidence of pre-accident remedial measures should be any less admissible for the same purposes.[3]

---

[3] Although the admissibility of evidence of post-accident improvements may tend to discourage the making of safety improvements for fear that the fact will be used against the defendant, improvements made before an accident are not discouraged similarly. It is true that the admissibility of evidence of pre-accident safety improvements may tend, theoretically at least, to discourage the making of those improvements. However, other economic considerations (such as reduction of potential future tort liability and customer demand for

The evidence of improved safety design did not become inadmissible on the question of feasibility merely because Ametek conceded in a general way that the design improvements were practical. In the judge's discretion, evidence, otherwise admissible, does not lose that status simply because of a general concession made by the party against whom that evidence is offered. *Boeing Airplane Co.* v. *Brown*, 291 F. 2d 310, 315 (9th Cir. 1961). See *Commonwealth* v. *Torres, ante,* 737 (1975). We reject any suggestion to the contrary in *Conry* v. *Boston & Maine R.R.* 227 Mass. 411, 414-415 (1917).[4]

The evidence of pre-accident improvements was admissible also on the third ground specified by the judge: the question of Ametek's duty to warn of any deficiency in the ironer's safety. Ametek contends that by admitting the evidence on this ground, the judge in effect ruled erroneously that there was a continuing duty to warn purchasers of safety improvements made to a machine which was reasonably safe at sale. However, the evidence was not admitted for such a narrow purpose, if indeed it was admitted at all for that purpose. The duty to warn for which the evidence was admitted could have been a duty to warn at the time of sale because the overtravel of the machine when operating at full speed exceeded the distance between the safety bar and the danger point on the rollers. Moreover, a duty to warn of post-sale safety measures may have existed because of the

greater safety features) tend to encourage safety improvements, and, in the case of pre-accident improvements, there is no vested tort claim to inhibit any desire to make those improvements.

[4] Although it is far from clear on the record, we assume that Ametek's general and continuing objection to the admissibility of evidence of pre-accident improvements presents for our consideration the admissibility of that evidence on each of the grounds on which it was admitted. In the absence of specific objection, however, no appellate argument of merit is preserved where the evidence to which objection is raised is admissible on at least one of the grounds on which it was admitted. See *Cuddy* v. *L & M Equip. Co.* 352 Mass. 458, 463 (1967).

negligent design of the machine as originally sold. Consequently, the admission of the evidence as bearing on a duty to warn of safety deficiencies did not involve necessarily the question of a manufacturer's continuing duty, if any, to notify customers of post-manufacture improvements to a properly designed machine. Ametek did not press the judge for limiting instructions on the scope of the admission of the evidence on the duty to warn, although the judge gave it ample opportunity to do so.

2. Ametek argues in support of its motion for directed verdicts that expert testimony concerning the design safety of the ironer was an indispensable and unsatisfied element of the plaintiffs' case. It contends that, because of the complex technology involved, expert opinion evidence was necessary to prove that Ametek failed to use reasonable care in designing the ironer.

Even if Ametek did not limit the grounds of its motion for directed verdicts to the single, forlorn prospect that this court might overrule *Carter* v. *Yardley* & *Co. Ltd.* 319 Mass. 92 (1946), the judge properly denied Ametek's motion.[5] There was ample evidence to support the submission of the case to the jury. The jury could have found, on the basis of their own lay knowledge, that the ironer's overtravel was not consistent with Ametek's duty to design the machine with reasonable care. *Carter* v. *Yardley* & *Co. Ltd., supra.* Moreover, there was evidence that Ametek never advised Laundry of this particular danger. Indeed, Ametek stated in a catalogue that "a magnetic brake stops the rolls with no coasting from residual momentum." There was evidence that an Ametek employee who had designed the machine knew that this statement was incorrect. He also believed that

---

[5] On presenting the motion for directed verdicts, Ametek's counsel stated that he had "a Motion for a Directed Verdict just in case the Supreme Judicial Court overrules the Carter against Yardley [case] tomorrow."

a machine which failed adequately to prevent a hand from being pulled into the mechanism was improperly designed and that the ironer did permit a hand to be pulled under the safety bar. Clearly this evidence was sufficient to send the case to the jury on both the question of negligent design and the question of negligent failure to warn. *Mealey* v. *Super Curline Hair Wave Corp.* 342 Mass. 303, 305 (1961). Ametek's argument that there was no duty to advise of safety improvements after the sale of the machine could not be raised on this record by a motion for directed verdicts.[6]

3. The judge committed no error in failing to give certain of Ametek's requested jury instructions.

There was evidence that Ezila's hand was unusually small, smaller than ninety-nine per cent of the female hands measured in a survey conducted for the Air Force. There was evidence, however, that Ezila's hand was not abnormal in size. Ametek requested instructions concerning its lack of liability to a person whose characteristics depart from its reasonable expectations.[7] The judge was under no duty to focus in his charge on this disputed factual circumstance. *Sullivan* v. *John Hancock Mut. Life Ins. Co.* 342 Mass. 649, 657 (1961). He did instruct the jury that Ametek was required to design a product which was reasonably safe and that Ametek had no obligation to develop safety devices to protect against every remotely possible danger. He also told the

---

[6] The three counts in the declaration alleged various acts or omissions of asserted negligence. None was based solely on an alleged duty to warn or, more particularly, on an alleged duty to advise of improvements made after the sale of the ironer.

[7] These requests read as follows: "The defendant was under no duty to design its machine so that it would be reasonably safe for a person who, by reason of a physical abnormality, was unable safely to use the machine.

"If you find that the accident to Mrs. doCanto came about because her hand was smaller than a size reasonably to be expected among users of the machine, then the defendant is not liable."

jury to determine whether the danger was a likely one or an unlikely one and whether that danger "involved a reasonably foreseeable risk to a person such as Mrs. doCanto, *as you find her to be*" (emphasis supplied). These instructions adequately covered the law pertaining to any abnormality in the size of Ezila's hand.

The same principles lead us to conclude that the judge did not err in refusing to instruct the jury concerning the written standards of the American Standard Safety Code for Laundry Machinery and Operations.[8]   The meaning of the safety code was a contested question of fact. Ametek asserted the code required merely a safety bar that would stop the ironer, and all parties agreed that the safety mechanism stopped the machine.   The plaintiffs contended that to comply with the code, the safety bar or other guard must be capable of stopping the machine within a reasonable time.   This dispute presented a factual question for the jury.   See *Liberatore* v. *Framingham,* 315 Mass. 538, 543 (1944); *Wadsworth* v. *Boston Gas. Co.* 352 Mass. 86, 93-94 (1967).

Finally, Ametek argues that the judge should have instructed the jury that Ametek "was under no duty to inform purchasers of its machines of any facts regarding changes or improvements it later decided to incorporate in the manufacture of similar machines."   This request did not embody a correct statement of the law in light of the evidence.

There was evidence from which the jury could have found that the machine was negligently designed and its braking capacity misrepresented.   When the manufac-

---

[8] The code contained a paragraph reading as follows:   "Each flat-work or collar ironer shall be equipped with a safety bar or other approved guard across the entire front of the feed or first pressure rolls, so arranged that the striking of the bar or guard by the hand of the operator or other person will stop the machine."

Ametek requested the following instruction:   "The evidence does not warrant you in finding that the defendant violated any written standards in the design of its machine."

turer of such a machine learns or should have learned of the risk created by its fault, it has a duty to take reasonable steps to warn at least the purchaser of the risk. See *Carney* v. *Bereault*, 348 Mass. 502, 506 (1965). One such reasonable step may be to warn at least the purchaser of changes which eliminate or tend to eliminate the risk created by the manufacturer's initial fault.

The judge charged the jury that in determining Ametek's negligence, if any, they would probably want to determine what warnings after sale, if any, Ametek should have given. Ametek did not object to this portion of the judge's charge. It made no attempt to focus the judge's attention on the distinction between a duty to warn of post-sale safety improvements in a properly designed machine and such improvements in a machine which was designed improperly. There was no error in the denial of Ametek's request concerning a duty to warn, or in the judge's treatment in his charge of the general subject of a duty to warn.[9]

4. The judge committed no error in denying Ametek's post-trial motions concerning the verdict under count 3

---

[9] No inference should be drawn from what we have said that the manufacturer of a properly designed product does not have a duty to warn of dangers in his product of which he knew or should have known at the time of sale. See *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92 (1946); *Mealey* v. *Super Curline Hair Wave Corp.* 342 Mass. 303, 305 (1961); *Haley* v. *Allied Chem. Corp.* 353 Mass. 325, 329 (1967); *Martin* v. *Bengue, Inc.* 25 N. J. 359, 366-367 (1957); *Tomao* v. *A. P. De Sanno & Son, Inc.* 209 F. 2d 544, 546 (3d Cir. 1954) (Massachusetts law). Moreover, there may be a duty to give reasonable warning of a product's dangers which are discovered after sale. See *Comstock* v. *General Motors Corp.* 358 Mich. 163, 176-178 (1959) (latent defect discovered shortly after product put on the market); *Rekab, Inc.* v. *Frank Hrubetz & Co. Inc.* 261 Md. 141, 146-147 (1971) (expensive machine improperly designed); *Braniff Airways, Inc.* v. *Curtiss-Wright Corp.* 411 F. 2d 451, 453 (2d Cir. 1969), cert. den. 396 U. S. 959 (1969), cert. den. sub nom. *Addabbo* v. *Curtiss-Wright Corp.* 400 U. S. 829 (1970) (deficiencies in airplane engine, discovered after sale and before accident).

(recovery for loss of consortium). Ametek argues that our opinion in *Diaz* v. *Eli Lilly* & *Co.* 364 Mass. 153, 167, n. 48 (1973), which came down on the second day of the trial of this case, indicates that a spouse may not recover for the loss of consortium in the circumstances involved here.

This action originally contained claims on behalf of Ezila for personal injuries and on behalf of Justiniano for consequential damages (but not for loss of consortium). On the day before trial, the plaintiffs without objection by Ametek amended their declaration to add three counts, one of which alleged loss of consortium. Ametek did not plead the statute of limitations and did not seek, at any time, to amend its answer to do so. On the fourth day of trial, just prior to the judge's charge to the jury, the plaintiffs, again without objection by Ametek, amended their declaration to state their claims in three counts, identical to those added by the prior amendment. Although Ametek presented a motion for directed verdicts on each count, it did not advance any argument focused on the consortium count.[10]

After trial Ametek moved for a new trial and also moved that the judge revoke his order allowing the filing of count 3, arguing in each instance "as a matter of law . . . [the claim] was barred" by the statute of limitations. The motions were denied.

These post-trial motions raise matters of discretion with the judge and cannot be used to compel the judge to rule on questions of law which could have been raised at trial but were not. *Kinnear* v. *General Mills, Inc.* 308 Mass. 344, 348 (1941). *Commonwealth* v. *Venuti,* 315 Mass. 255, 261-262 (1943). *Nussenbaum* v. *Chambers* & *Chambers Inc.* 322 Mass. 419, 425 (1948). *Daddario* v. *Gloucester,* 329 Mass. 297, 301 (1952). There is no

---

[10] As indicated above, the motion for directed verdicts was presented "just in case the Supreme Judicial Court overrules the Carter against Yardley [case] tomorrow."

showing that the judge made any ruling of law in denying these post-trial motions. If he had passed on them in terms of the running of the statute of limitations, his ruling would have been correct because Ametek had not pleaded the statute of limitations. There was no abuse of discretion in denying these motions.[11]

5. The judge did not abuse his discretion in denying Ametek's motion for a new trial on the personal injuries count on the ground of excessive damages. The allowance of a new trial for this reason rests in the sound discretion of the judge. *Bartley* v. *Phillips,* 317 Mass. 35, 41-42 (1944). Unless the damages awarded were greatly disproportionate to the injury proven or represented a miscarriage of justice, an appellate court will not find an abuse of discretion in the judge's refusal to grant a new trial. *Loschi* v. *Massachusetts Port Authy.* 361 Mass. 714, 715 (1972). In concluding that the judge committed no error of law, we consider Ezila's age (twenty-nine) and weekly earnings ($140) at the time of the accident; the loss of ninety-five per cent of the function of her right hand (her dominant hand); her inability to perform many household tasks or to obtain employment; her pain and suffering, particularly while her hand was in the machine and while she was in the

---

[11] If the statute of limitations had been pleaded, recovery on the consortium count should have been denied pursuant to the language in the *Diaz* opinion. See *Diaz* v. *Eli Lilly & Co., supra,* at 167, n. 48. Although a permissible amendment to a complaint (or declaration) speaks as of the date of the commencement of the action and thus is no more subject to the defense of the statute of limitations than is the original complaint (*Wadsworth* v. *Boston Gas Co.* 352 Mass. 86, 89 [1967]), the *Diaz* case deals with the retroactive operation, if any, of that decision, and not merely with the question of the barring of an amended claim on statute of limitations grounds.

We do not accept the plaintiffs' contention that a person in the position of Justiniano may pursue his claim for loss of consortium because he asserted his claim for consequential damages from the commencement of the action. To so hold would establish an unfair advantage for husbands of injured plaintiffs over the wives of injured plaintiffs.

hospital where her fingers were amputated and skin grafts undertaken; her disfigurement, including scars from skin graft operations; her future need for artificial hands; and her continuing discomfort and embarrassment. Although many of these elements of damage are incapable of precise, monetary measurement, the trial judge, who saw the injured plaintiff and heard her testimony, is in a far better position than we to determine the reasonableness of the jury's award. We find no abuse of discretion.

*Exceptions overruled.*