**Marcia SALAMON, et als, Plaintiff**
**vs.**
**CRANE COMPANY, Defendant**

**No. 355**

District Court/Hampden, ss.
Appellate Division/Western District
Trial Court of the
Commonwealth of Massachusetts

**November 10, 1982**

Earlon L. Seeley, Jr., counsel for plaintiff.
Edward J. McDonough, counsel for defendant.

## DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Western District sitting at Springfield upon report from the Springfield Division and it being found that the Trial Judge did not abuse his discretion in denying the Defendant's Motion for a New Trial.

It is hereby

ORDERED: That the Clerk of the Springfield Division make the following entry in said case on the docket of said Court, namely: Report is Dismissed.

Dated November 10, 1982
**Bernard Lenhoff, Justice**
**Mel L. Greenberg, Justice**
**Allan McGuane, Justice**
Opinion filed herewith.
**Robert E. Fein, Clerk**

## OPINION

**Lenhoff, J.** These loss of consortium proceedings were commenced in the Springfield Division of the District Court Department by the plaintiffs, Marcia Salamon, and minors Michelle Salamon, born May 3, 1973 and Stephen Salamon, born July 10, 1977, against the defendant, who is the employer of their husband and father, Joel Salamon. They allege in their complaint that the negligence of the defendant, in addition to its wilful, wanton and reckless conduct, caused injury to the said Joel Salamon, whereby damages are claimed for care, support, protection and consideration, companionship, affection, society and consortium.

The defendant's answer set forth various defenses, including the lack of negligence on the part of the defendant.

The case was removed from the district to the superior court; and, was remanded by said superior court to the Springfield Division of the District Court Department for hearing.

After hearing, the trial court found for the plaintiff, Marcia Salamon, awarding her damages in the sum of $38,000.00; found for the minor plaintiff, Michelle Salamon and assessed her damages in the sum of $6,500.00; and found for the minor plaintiff, Stephen Salamon, his damage award being in the sum of $3,000.00.

Thereafter, the defendant seasonably filed a motion for a new trial, listing the following grounds for same therein: (1) the findings are against the evidence; (2) the findings are against the weight of the evidence; (3) the findings are in error as a matter of law; (4) the amounts of damages awarded were excessive and unconscionable; and, (5) a new trial is necessary in order that substantial justice

can be done.

After hearing was held on said motion for a new trial, the trial court denied same. Following such denial, the defendant claiming to be aggrieved thereby caused this matter to be reported to this Appellate Division for determination.

At the hearing, before this tribunal, the defendant waived[1] the issue of liability. In consequence thereof, the following reported facts are confined to issues raised, with the issue of liability no part of our review consideration.

Joel Salamon, the husband and father of the plaintiffs, in the course of his employment with the defendant sustained a work-related injury to the little finger of his left hand. Said injury resulted when a machine spindle dropped down to a table smashing it with the tip of its drill portion, penetrating the member. After being hospitalized for three or four days in October, 1978, his hand was placed in a cast and he was discharged. During the ensuing month he took prescribed medication for pain and during this time he continuously felt ''down in the dumps''; he was short-tempered; was prevented from working around the house; was unable to help with household chores; and, his condition and attitude affected and interfered with his sexual relationship involving the plaintiff spouse plus his society and companionship with his children, the minor plaintiffs.

In December, 1978, the said Joel Salamon underwent a second operation on his finger, being in the hospital about four days before Christmas. Again, his hand was placed in a cast which remained on his hand for about a month.

In March, 1979, he was admitted to his third period of hospitalization where he spent about a week to undergo a skin graft procedure. For a third time, his hand was placed in a cast that wasn't removed for about a month.

Having constant, continuous, difficulty with his finger, same was finally amputated in August, 1979 at his fourth hospitalization. Following this operation, he was depressed, which was further exacerbated by his remaining stump becoming infected. This necessitated a lancing to remedy the infection. Post-operatively, he had great difficulty in adjusting.

In total, Joel Salamon was out of work for fifty-seven consecutive weeks, being under medications at various times during that period, taking pain-killer drugs that made him drowsy and lethargic. From October, 1978 until some time after August, 1979, the said Joel Salamon suffered from depression and was withdrawn. That had a reciprocal effect on the plaintiff spouse that was greatly intensified during post-hospital and post-operative periods. Over a continuous fourteen-month period, Joel Salamon did not feel like his normal self, was snapping at his wife and children with marked frequency. His relationship and society with his children was curtailed; and his sexual exposure with his spouse was diminished.

The plaintiff spouse worried over her husband's condition and altered personality caused by his injury. It was a most disturbing factor to their previous satisfactory sexual relationship, reflecting in her being affected emotionally. Also, when Joel Salamon was home and not in the hospital, his contacts with the plaintiff spouse and plaintiff minor children were strained and unpleasant compared to prior thereto when they were friendly with his joking, fooling around and participating in activities with his children. Also, he stopped changing the baby, stopped washing dishes, stopped picking-up things, stopped playing with the children; stopped taking the children out and stopped doing many things around the house, all of which he did before his injury. At times, tempers flared with husband and wife engaging in

---

[1] Further, in the brief submitted by the defendant, the issue of liability was not argued. As per Dist./Mun. Cts. R. Civ. P. 64(f), the Appellate Division need not pass upon this issue or question, nor consider same.

arguments that were disrupting to the marital partners and the children who witnessed these outbursts.

After the last operation in August, 1979, the situation was difficult, but, as time passed, Joel adjusted until normalcy returned.

The trial judge's decision in ruling on a motion for a new trial filed as per Dist./Mun. Cts. R. Civ. P., Rule 59, is clearly one of discretion. **doCanto v. Ametek, Inc.**, 367 Mass. 776, 787 (1975) **Hill v. Bookbinder,** 4 Mass. App. Ct. 818 (1976). Its denial stands unless the discretion of the court was manifestly abused. **Reni v. Courtney,** 4 Mass. App. Ct. 235 (1976).

An award of damages will not be disturbed unless the trial court abused its discretionary action amounting to an error of law. **Worcester v. Eisenbeiser,** 7 Mass. App. Ct. 345, 352 (1979); **Bartley v. Phillips,** 317 Mass. 35, 41 (1944). A new trial would be in order if the trial judge's exercise of discretion was such that "no conscientious judge, acting intelligently, could honestly have taken the view expressed." **Toree v. Harris - Seybold Co.,** 1980 Mass. App. Ct. Adv. Sh. 890, 891. **Palma v. Racz,** 302 Mass. 249, 251 (1939).

Reviewing the reported evidence indicates that same is sufficient to enable a trial judge to assess damages. The award of damages, in the absence of requests for rulings of law, imports that the trial judge only considered elements that were legal and proper. Hence, the defendant's citing the case **Diaz v. Eli Lilly & Co.,** 364 Mass. 153 (1973) that excludes from a loss of consortium action **loss of services of the injured spouse such as support and household services,** cannot here be applied with a resultant disposition favorable to the defendant. The failure to file such requests precludes further consideration of supposed or suspected error in this particular.

The sole remaining issue for disposition is whether the damage awards of the trial Judge are so clearly disproportionate or excessive for the injury sustained that no conscientious judge acting intelligently could honestly have made such awards.

Damages must be reasonably ascertainable from the evidence, but if there be an element of uncertainty in their assessment, this would not bar recovery. **Dalton v. Demos Brothers General Contractors, Inc.,** 334 Mass. 377, 378-379 (1956). Damages seldom can be proved with exactness of mathematical certainty and is left to estimate and judgment, sometimes on meager evidence. **Piper v. Childs,** 290 Mass. 560, 563 (1935).

In a case of this nature involving the ascertainment of damages for loss of protection, consideration, companionship, affection, society and consortium, there is no monetary measuring device to determine the value of such loss. The trial judge must rely on his observations, experience and knowledge to perform his assigned task. Also, the trial judge heard the testimony and is in a far superior position than others to make a reasonable judgment of the damages to be awarded. **doCanto v. Ametek, Inc., supra,** at page 788. Although we may believe the damage awards in the case at bar to be on the high side, they fail to shock our consciences in the light of the evidence.

We conclude that the trial judge did not abuse his discretion in denying the defendant's motion for a new trial. Therefore, the report is dismissed.

**Bernard Lenhoff, Justice**
**Mel L. Greenberg, Justice**
**Allan McGuane, Justice**
This certifies that this is the OPINION of the Appellate Division in this cause.
**Robert E. Fein, Clerk**