BERTRAM SCHAEFFER vs. GENERAL MOTORS CORPORATION.

Middlesex.    September 14, 1976. — March 16, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

Negligence, Manufacturer, Motor vehicle, Duty to warn, Contributory.
   Evidence, Admissions, Relevancy, Computer simulation. Practice,
   Civil, Charge to jury.

At the trial of an action for injuries sustained in an automobile acci-
   dent, evidence warranted a finding that the defendant manufacturer
   was not negligent in the manufacture, design, or inspection of a con-
   trolled differential with which the automobile was equipped. [173]
At the trial of an action for injuries sustained in an automobile acci-
   dent allegedly resulting from the defendant manufacturer's failure
   to warn of dangers posed by a controlled differential with which the
   automobile was equipped, there was no error in the judge's refusal
   to instruct the jury that, if the differential posed dangers, the manu-
   facturer would be presumed to know of those dangers as matter of
   law. [173-175]
At the trial of an action for injuries sustained in an automobile acci-
   dent, allegedly resulting from the defendant manufacturer's failure
   to warn of dangers posed by a controlled differential with which the
   automobile was equipped, evidence of cautionary language contained
   in the defendant's automobile manuals for subsequent years was ad-
   missible to show the practical possibility of giving warnings. [175-
   177]
At the trial of an action for injuries sustained in an automobile acci-
   dent, a computer simulation of the accident offered by the defendant
   automobile manufacturer was admissible only if the standard for
   admissibility of scientific tests was met. [177-178]

TORT.    Writ in the Superior Court dated May 25, 1966.
The action was tried before Dimond, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

William Schwartz for the plaintiff.
Joseph J. Hurley (Mary M. Logalbo with him) for the
defendant.

QUIRICO, J.   The plaintiff was seriously injured on Au-
gust 12, 1964, when his 1963 Cadillac automobile crossed

the median strip of the Massachusetts Turnpike and collided with an oncoming car. The Cadillac, manufactured by the defendant, was equipped with an optional item known as a controlled differential. According to the owner's manual which accompanied the plaintiff's automobile, this device "always directs the major driving force to the wheel having the greater traction. The Controlled Differential makes driving safer and more economical by providing additional traction in snow, ice, mud, sand and gravel, particularly when one rear wheel is on a surface providing poor traction. During normal driving and cornering, the controlled unit functions as a standard differential. When one wheel encounters a slippery surface, however, the Controlled Differential allows the wheel with the greater traction to drive the car."

The plaintiff alleged that the controlled differential (differential) caused the rear of his car to sway from side to side (to fishtail) on the wet highway until the right rear wheel encountered the rough macadam surface of the breakdown lane at which point the differential transferred traction to that wheel. The car then shot left across the road, went over the median, and into the eastbound lane where it was struck. In his action against the automobile manufacturer, the plaintiff charged negligence in the manufacture, design, and inspection of the differential, and in the failure to give adequate warnings of the hazards associated with this device. The defendant denied these allegations and pleaded contributory negligence as an affirmative defense. At trial, there was considerable evidence of the operating characteristics of the differential, including a purported computer simulation by the defendant's expert and excerpts from the 1963, 1968, 1969, and 1970 Cadillac owners' manuals.

The trial judge submitted the case to the jury only on the issue of negligent failure to warn of unreasonable risks. He instructed the jury that the defendant could not be held liable unless it knew or had reason to know that the differential was likely to be dangerous.

The jury returned a verdict for the defendant. The

plaintiff appealed to the Appeals Court after his motion for a new trial was denied, and we transferred the case here on our own motion for direct appellate review. G. L. c. 211A, § 10 (A). We reverse.

1. The plaintiff argues that it was error for the judge to direct a verdict for the defendant on the issues of negligent design, manufacture, and inspection. We do not agree with this contention. It appears that the differential adequately performed the functions for which it was designed and manufactured. Cf. *doCanto* v. *Ametek, Inc.,* 367 Mass. 776 (1975) (improper design prevented safety mechanism from operating as intended). The differential was intended and designed to transfer power to the wheel having the greater traction, thus helping to propel the vehicle on wet or slippery surfaces, and it did so.

The testimony of the plaintiff's expert did not raise an issue of fact regarding a design defect making the differential unsafe for its intended use. At best, this testimony may be read as bearing on the danger to a driver who does not know how the differential operates. There was therefore no error in this regard.

Of course, the issue of negligent design and manufacture would properly have been submitted to the jury if there were evidence indicating that the plaintiff's injuries resulted from the differential's failure to perform its intended function, but there was no such evidence.

2. Although there was not sufficient evidence to submit the case to the jury on the issue of negligent design, manufacture, or inspection, there was considerable evidence tending to prove that the defendant had a duty to warn purchasers that the differential might reduce safety and stability in certain road conditions. Indeed, the arguments and expert testimony which the plaintiff presented on the issues of negligent design, manufacture, and inspection rested fundamentally on an alleged violation of the duty to warn. The fact that these side effects could not have been eliminated through improved design, manufacture, or inspection does not relieve the defendant of the duty to warn of their existence. This duty has been described as

"that of warning of the dangers involved in use of the product, and, where called for, directions for its use. There is no dispute that the seller is under a duty to give adequate warning of unreasonable dangers involved in the use of which he knows, or should know." W. Prosser, Torts § 96 at 646-647 (4th ed. 1971), and cases cited. In this case, the manual accompanying the plaintiff's automobile contained no warnings of these driving hazards, and affirmatively represented the differential as a safety device.

The plaintiff challenges the judge's failure to instruct the jury that if they found that the differential posed dangers, the defendant would be presumed to know of those dangers as matter of law, and the jury might consider that presumed knowledge in deciding the issue of the defendant's duty to warn. There was no error in this regard. While the defendant is liable for its failure to warn only if it knew or reasonably should have known of injury from the use of its product, no conclusive presumption of such knowledge was appropriate in this case. See *Ricciutti* v. *Sylvania Elec. Prods. Inc.,* 343 Mass. 347, 352 (1961), and cases cited.

The inapplicability of such a presumption, however, does not require a plaintiff to present direct proof of the manufacturer's knowledge. As we said in *Haley* v. *Allied Chem. Corp.,* 353 Mass. 325, 330 (1967), quoting in part from *Carney* v. *Bereault,* 348 Mass. 502, 506 (1965), "The duty to exercise reasonable care includes a duty to warn of danger, if 'the person on whom that duty rests has some reason to suppose a warning is needed.'" See Restatement (Second) of Torts § 388 (1965). Evidence that the differential was designed by the defendant's engineers who knew of its intended use, the conditions under which it would be operated, and that its very utility included attendant risks permits an inference that the defendant in the exercise of reasonable care should have foreseen and given warning of these probable dangers. See Annot., 76 A.L.R.2d 9 (1961), and Later Case Service 312 (1975).

The judge's instructions to the jury were appropriate on the limited scope of the evidence at the trial, but the

verdict of the jury may have been the result of the action of the judge in unduly restricting certain evidence which we discuss below.

3. The judge admitted language from owners' manuals issued by the defendant in 1968, 1969, and 1970,[1] as evidence of the operational characteristics of the differential, the parties having agreed that the design of the differential had not changed from that used in the plaintiff's 1963 automobile. The jury were instructed that they could consider the language of those manuals on the questions whether a risk existed in 1963 and whether the defendant knew or should have known of such risk. The plaintiff contended both at the trial and before this court that the statements contained in the defendant's manuals for those three years should have been considered for other purposes as well. We agree with that contention. The judge correctly instructed the jury that the manuals cannot ordinarily be considered as admissions of prior negligence or fault. But this rule of evidence has given rise to numerous exceptions.[2] The evidence was also admissible to prove

---

[1] The text describing the differential was substantially the same in the three manuals. The 1969 manual, for example, stated: "CONTROLLED DIFFERENTIAL The optional Controlled Differential (available on all models except the Eldorado) provides additional traction on snow, ice, mud, sand and gravel, particularly when one drive wheel is on a surface providing poor traction.

"During normal driving and cornering, the Controlled unit functions as a standard differential. When one wheel encounters a slippery surface, however, the Controlled Differential directs driving force to the wheel having the better traction.

"CAUTION: On cars equipped with a Controlled Differential, never run the engine with one drive wheel off the ground, since the car may drive through the wheel remaining on the ground.

"CAUTION: On cars equipped with a Controlled Differential, care should be taken to avoid sudden accelerations when both drive wheels are on a slippery surface. This could cause both drive wheels to spin, and allow the vehicle to slide sideways on a crowned road or when in a turn."

[2] We do not deem it presently necessary or advisable to consider whether these numerous exceptions have in effect overwhelmed the basic rule, or to adopt the plaintiff's suggestion that the amendment of the manuals is sufficiently different from a subsequent repair to warrant creating a separate rule of evidence.

the practical possibility of giving cautionary warnings. *doCanto* v. *Ametek, Inc., supra. Coy* v. *Boston Elev. Ry.,* 212 Mass. 307, 309-310 (1912). *Beverley* v. *Boston Elev. Ry.,* 194 Mass. 450, 458 (1907). Such evidence would bear "directly on the question whether . . . the defendant had done all that was practicable to prevent such an accident as occurred." *Coy* v. *Boston Elev. Ry., supra.*[3] The 1968 1969, and 1970 manuals were relevant in determining the defendant's duty to warn the plaintiff of the danger of the differential which was included in the 1963 Cadillac. *doCanto* v. *Ametek, Inc., supra* at 781-782.

The judge admitted the 1968-1970 manuals only as evidence of the operating characteristics of the differential and of the defendant's knowledge of the associated risks. Thus counsel for the plaintiff was required to delete certain cautionary warnings when referring to the manuals in the jury's presence and, for example, he was not permitted to refer to the word "CAUTION" or the phrase "care should be taken to avoid" which appeared in the 1969 manual.[4] The manuals themselves were not permitted to go to the jury. Because we have ruled that the manuals were admissible to show the feasibility of giving warnings, we hold that this deletion of cautionary language was error.[5]

Because these evidentiary errors entitle the plaintiff to a new trial on the count for failure to give warning, we

---

[3] We have previously noted that a defendant's general concession of the feasibility of safety precautions will not render this evidence inadmissible. See *doCanto* v. *Ametek, Inc., supra* at 781, rejecting any suggestion to the contrary in *Conry* v. *Boston & Me. R.R.,* 227 Mass. 411, 414-415 (1917).

[4] See note 1 *supra.*

[5] We do not accept the plaintiff's contention that the "Doctrine of Verbal Completeness" necessarily prevents the deletion of language not otherwise admissible. Public policy may require that prejudicial words be struck (cf. *Commonwealth* v. *Lannon,* 364 Mass. 480, 482-484 [1974]), particularly where the omissions are not "essential to a complete understanding of what . . . [the speaker] intended to express by the particular phrases and language which he used." *Commonwealth* v. *Keyes,* 11 Gray 323, 324 (1858).

consider the further question raised by the parties which may arise at any retrial.

4. We are concerned with the judge's admission in evidence of the results of a computer simulation of the accident. This evidence purported to show that the differential did not adversely affect the operation of the plaintiff's automobile. The simulation was based on a computer program developed by the Calspan Corporation, serving automobile manufacturers primarily, to predict the behavior of automobiles under a variety of circumstances. The simulations have also been used to reconstruct accidents by determining which preaccident conditions were most likely to have produced the observed characteristics of the actual physical event. The defendant's expert testified, for example, that the operating properties of the vehicles, the friction coefficient of the pavement, and the lengths and nature of the skid marks could be entered into the computer program. By trial and error, the computer would then determine what impact speeds would yield a reconstruction most consistent with this physical evidence. The process ultimately assigns to the chosen set of variables those values which collectively produce the best computer match to the observed postaccident data. In the present case, a preexisting computer programmed simulation was modified to include the effects of a controlled differential and the program was then run in both its original and modified forms. The expert further testified that the similarity of results indicated that the differential was not the factor responsible for the plaintiff's accident.

The simulation procedure requires the solution of a set of simultaneous equations: The computer's function is to perform rapidly and accurately an extensive series of computations not readily accomplished without use of a computer. We do not question the judge's observation that we are living in a computer age, nor do we dispute his taking judicial notice of the reliable and widespread use of computers in many phases of contemporary affairs.

Our concern is not with the precision of electronic calculations, but with the accuracy and completeness of the

initial data and equations which are used as ingredients of the computer program. More generally, we feel that the standard for admissibility of scientific tests may not have been met in this instance. That standard was clearly enunciated in *Commonwealth* v. *Fatalo,* 346 Mass. 266, 269 (1963): "Judicial acceptance of a scientific theory or instrument can occur only when it follows a general acceptance by the community of scientists involved." Cf. *Commonwealth* v. *A Juvenile,* 365 Mass. 421, 425 (1974). The authorities cited by the parties show substantial disagreement on the reliability of computer simulation. We recognize that this process has become increasingly refined under the demands of modern technology and the situation may have changed with developments since the original trial of this action. Whether the simulation technique has achieved sufficient reliability and acceptance to warrant its use in judicial proceedings is a question to be decided in the first instance by the trial judge.

If such evidence is again offered at any retrial of this action it is essential that the trial judge should (a) conduct a hearing in the absence of the jury on the question whether the tests conducted and results ascribed thereto meet the prescribed standards for the admissibility of such evidence, and (b) that he put into the record, by dictation, for the transcript or otherwise, the findings of fact made by him as the basis for the admission or exclusion of the evidence in question.

5. The plaintiff argues that the "charge was fatally defective in that it did not require that plaintiff's contributory negligence be a 'substantial factor' in causing his injuries or a 'proximate cause' thereof." We find no error in the charge on contributory negligence, taken as a whole. However, in so far as it may be relevant to litigation not affected by our comparative negligence statute, G. L. c. 231, § 85,[6] we note our adherence to the principle

---

[6] The "cause of action" in this case arose before January 1, 1971; hence G. L. c. 231, § 85, as appearing in St. 1969, c. 761, which established the doctrine of comparative negligence, is not applicable.

of Restatement (Second) of Torts § 465 (2) (1965): "The rules which determine the causal relation between the plaintiff's negligent conduct and the harm resulting to him are the same as those determining the causal relation between the defendant's negligent conduct and resulting harm to others."

The judgment is reversed and the case is remanded for a new trial.

*So ordered.*