MARSHALL YOUNG, administrator,[1] & another[2] *vs.* ATLANTIC
RICHFIELD COMPANY.

Norfolk. May 7, 1987. — September 2, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Negligence*, Mini-serve gasoline station, Standard of care, Duty to warn,
Proximate cause. *Proximate Cause.*

At the trial of an action against the owner of a gasoline station arising out
of the death of a fifteen year old boy who had been killed, while pumping
gasoline into the fuel tank of an automobile parked by his mother at a
"mini-serve" gasoline island containing several gasoline pumps and an
air pump, when a second automobile whose driver sought to use the air
pump backed into the boy, the evidence was insufficient to warrant a
finding that the defendant was negligent in developing the "mini-service"
program and in locating the air pump next to the gasoline pumps where,
even assuming that the defendant's failure to post an "attendant will
pump gas" sign was negligent, its negligence was not the proximate
cause of the boy's death; where the owner had no duty to warn of the
obvious danger of other automobiles near the service island; and where,
although the air pump increased traffic at the service island, the increased
possibility of injury which could result from increased traffic was a risk
which was obvious and not unreasonable. [841-843] WILKINS, J., con-
curring; ABRAMS, J., dissenting.

There was no merit to the argument by the plaintiffs in a civil action that
defense counsel's statement to the jury that the defendant would "stand
by your verdict" amounted to a waiver of defendant's appellate rights.
[843]

CIVIL ACTION commenced in the Superior Court on May
19, 1978.

The case was tried before *Andrew Gill Meyer*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

[1] Of the estate of Lloyd Young.

[2] Carole Young.

*Thomas D. Burns* (*Christopher A. Duggan* with him) for the defendant.

*Leonard Glazer* (*David I. Levine & Frank E. Glazer* with him) for the plaintiffs.

NOLAN, J. This case arises out of an automobile accident, which occurred on June 22, 1977, at a gasoline service station owned by the Atlantic Richfield Company (Arco). Lloyd Young, a fifteen year old boy, was killed after pumping gasoline into the fuel tank of an automobile driven into the station by his mother, Carole Young. Lloyd Young's adminis-trator brought a wrongful death action against Arco and its lessee, John Santilli, alleging, inter alia, that both parties were negligent. Carole Young, who was present at the time of the accident, also sought recovery for negligent infliction of emo-tional distress. The jury returned special verdicts in favor of the plaintiffs. Arco appealed and argues that the trial judge should have allowed its motion for directed verdicts, motion to dismiss or its motion for judgment notwithstanding the ver-dicts.[3] We transferred the case on our own motion. We now reverse and order judgment to be entered for Arco.

1. *The accident.* Arco built and leased to Santilli an Arco service station containing a building and two service islands. Each island contained gasoline pumps and an air pump. One gasoline pump on one of the islands had a sign on its top which read "mini serve." Carole Young thought "mini serve" meant "self-service." She drove into the station on the day of the accident and saw two cars at one of the islands. She testified that she said, "These pumps are busy, but the other side is self-service." She also testified that her son Lloyd responded: "Well, go to the self-service one. I'll pump the gas." Carole Young drove her car to the pump with the mini-serve sign, and Lloyd got out to pump the gasoline. Santilli approached the boy and said, "I'll take care of it" or "I'll be with you in

---

[3] Santilli withdrew his appeal. Joseph Kovack, the driver of the car which collided with the Young vehicle, was a third-party defendant impleaded by Arco. Kovack settled the case brought by Lloyd Young's administrator, and did not appeal the judgment against him in the action brought by Carole Young.

a minute," and then returned to service the cars at the other island. Lloyd pumped $5.00 worth of gasoline, and then returned to the rear of the car to replace the cap on the gasoline tank.

Before the Youngs had entered the station, Joseph Kovack, a seventy-seven year old man, drove his car into the station and parked it next to the station building. He asked Santilli to check his tire for air and Santilli told him to pull over to the air pump at the island and he would be with him momentarily. Kovack backed up at a speed of between 12 and 15 miles per hour and crashed into Young's automobile, crushing Lloyd. Carole Young got out of her car and watched him die. As a result of this tragedy, Carole Young experienced "intrusive recollections and visualizations of her son's death" up until the time of trial, and an expert testified that this condition, post-traumatic stress syndrome, would likely continue for the rest of her life.[4]

2. *The plaintiffs' case.* On appeal, Arco argues that the evidence was insufficient to support the jury's verdict that it was negligent. The plaintiffs counter that Arco was negligent in developing the mini-service program, and in locating the air pump next to the gasoline pumps. This negligence, they claim, created an unsafe condition on the premises which caused the death of Lloyd Young and the subsequent injuries to Carole Young. We review the evidence in the light most favorable to the plaintiffs. *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978).

Arco developed the mini-serve program in the early 1970's as an incentive to lessee-dealers to increase gasoline sales. Under the program, the dealer would pump gasoline but would provide no additional service, such as checking oil, checking air, or washing windshields. Gasoline at a mini-serve pump was typically 2 to 3 cents cheaper than at a full-service pump. Mini-serve was to be used only in areas where self-serve was illegal. An Arco representative admitted that, at the time of

---

[4] A videotape in support of this conclusion was admitted in evidence and shown to the jury. This tape was available on appeal, but, because of our result today, we do not reach the question of prejudicial emotionalism.

the accident, it was illegal for a gasoline station in Massachusetts to have both self-service and full-service islands. In 1977, self-service stations were permitted only where the entire station was used for self-service. Internal documents of Arco introduced in evidence indicated that Santilli's station was precisely the type of station at which Arco's mini-serve program was aimed.

Santilli testified that his customers were confused by the mini-serve sign. Arco representatives testified that they had no formal way of communicating the meaning of the mini-serve program to customers. Arco relied on sales representatives to explain the program to the dealers, who in turn were to explain it to the customers. According to testimony of an Arco representative, the mini-serve sign was only intended to identify the mini-serve pump once customers were familiar with the program. Nevertheless, Arco eventually developed a new sign which read "Mini Serve Island—attendant will pump gas—Use Full Serve Island for complete service." The new signs were available to dealers for $28.00 by 1976, but Santilli testified that he never saw one. Arco provided Santilli with a roof sign which said "Mini serve—check our gas prices," an entrance sign which said, "Low Gas Price," and a mini-serve pump sticker which said, "Look Low Price."

An Arco representative testified that the location of an air pump at the gasoline island would create more traffic that could bump into people pumping gasoline. After the accident, Santilli told an Arco representative that he wanted the air pump moved because he felt the location of the air pump "may have contributed to the incident." According to Santilli, he moved the air pump from the island to the side of the station building after he experienced problems with the air line freezing during the winter of 1978.

At self-service stations owned by Arco, the company had a policy of equipping the stations with pump operation precaution signs. One of the precautions Arco recommended for the safe dispensing of gasoline was that the person dispensing gasoline is "to be aware of other vehicles in the area." Santilli testified that the risk of being hit by a car while pumping gasoline was

not obvious to him before he learned "the gas station business." An Arco representative testified that Arco did not require the pump precaution sign to be placed at mini-serve stations because members of the public were not supposed to pump gasoline at mini-serve pumps.

3. *Analysis*. In reviewing whether the evidence was sufficient to establish negligence on the part of Arco, we adopt the view of the evidence most favorable to the plaintiffs. *Poirier v. Plymouth*, 374 Mass. 206, 212 (1978). The test is whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Id.*, quoting *Raunela v. Hertz Corp.*, 361 Mass. 341, 343 (1972). Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury. *Mullins v. Pine Manor College*, 389 Mass. 47, 56 (1983). In applying this test, we are unable to discern any view of the evidence which would support the verdicts in favor of the plaintiffs. Although we have said that judicial intrusion into jury decisionmaking in negligence cases is exceedingly rare, *MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 140, cert. denied, 474 U.S. 920 (1985), these verdicts cannot stand.

Arco had a duty to maintain its "property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Mounsey v. Ellard*, 363 Mass. 693, 708 (1973). This duty includes the duty to act with reasonable care to prevent harm caused by a third person. *Mullins, supra* at 54. Indeed, in its brief Arco admits that it owed the plaintiffs a duty to keep the station in reasonably safe condition or to warn them against dangers that might arise from the use of the property that they were not likely to recognize.

The determinative question in this case is whether Arco's duty to use reasonable care to keep the station reasonably safe required Arco to post warning signs in the station. The plaintiffs argue that Arco was negligent in failing to post a sign at the

mini-serve pump which would have informed patrons that the attendant pumped the gasoline. Alternatively, they argue that Arco was negligent because it did not post a sign warning its patrons to be aware of other automobiles in the area. Even if we assume that Arco's failure to post an "attendant will pump gas" sign negligently increased the likelihood that customers would leave their vehicles to pump gas, the risk that a customer who left his vehicle to pump gas would be injured by a negligently operated motor vehicle was not a reasonably foreseeable consequence of any negligent failure to post such a sign. As our cases often say, the defendant's negligence, if any, was not the proximate cause of the injury. Cast differently, Arco's breach of duty did not create a risk of the species which was causally related to the result which occurred. *Bellows* v. *Worcester Storage Co.*, 297 Mass. 188, 197 (1937). See *Stone* v. *Williams*, 64 N.Y. 2d 639, 642 (1984) (plaintiff injured in rear end collision while checking whether attendant had securely replaced gas cap; held that breach of duty of service station, if any, was not proximate cause of plaintiff's injuries). W.L. Prosser & W.P. Keeton, Torts 426-427 (5th ed. 1984).

The plaintiffs also argue that Arco had a duty to post a sign warning its patrons to be aware of other automobiles in the area. We disagree. If a risk is of such a nature that it would be obvious to persons of average intelligence, there is, ordinarily, no duty on the part of the property owner to warn of the risk. *St. Rock* v. *Gagnon*, 342 Mass. 722, 724 (1961). *Clough* v. *New England Tel. & Tel. Co.*, 342 Mass. 31, 35-36 (1961). *Del Sesto* v. *Condakes*, 341 Mass. 146, 147 (1960). In our society, the average fifteen year old boy who has completed the tenth grade has been taught from a very young age about the dangers of automobiles. Such dangers are obvious to a fifteen year old of average intelligence. See *Polak* v. *Whitney*, 21 Mass. App. Ct. 349, 353 (1985) (no duty to warn that an automobile could collide with an automobile parked on the street near defendant's house). Arco had no duty to warn of a danger of which the plaintiffs should have been aware. *St. Rock, supra* at 724; Prosser & Keeton, *supra* § 61, at 427.

We also disagree with the plaintiffs' contention that Arco was negligent in placing the air pump at the gasoline islands. To be sure, Arco had a duty to design the station in a safe manner where vehicles had sufficient room to maneuver and patrons were not unreasonably placed at risk, but the location of the air pump at the gasoline island gives no indication that Arco violated this duty. The air pump created no greater danger than would the presence of another gas pump. Although the air pump increased traffic at the island, just as an additional gas pump would have done, the increased possibility of injury which could result from increased traffic is a risk which is obvious and not unreasonable. Arco is only required to use reasonable care to make its stations reasonably safe. *Mounsey* v. *Ellard*, 363 Mass. 693, 708 (1973).[5]

The plaintiffs also claim that Arco's appeal should not be heard because Arco's counsel told the jury Arco would "stand by your verdict" during closing argument. The plaintiffs' reliance on *Dalton* v. *Post Publishing Co.*, 328 Mass. 595, 599 (1952), is inapposite. Defense counsel's expression of confidence in the jury system in no way amounted to a waiver of rights, as was the case in *Dalton*. We have never held such a statement to amount to a waiver of appellate rights, and we decline to do so today.

*Judgments reversed.*

---

[5] In their brief the plaintiffs cite several products liability cases in arguing that Arco had a duty to warn of the dangers involved in the use of gasoline. In the cases cited by the plaintiffs, the duty imposed was a duty to warn about the dangers of a *product*. In the present case, there was no evidence that the product gasoline was in some way defective or dangerous. In fact, at a later point in their brief, the plaintiffs admit that the sole theory of liability was that the *premises* were unsafe. Since we agree with the plaintiffs that Arco had a duty to use reasonable care to maintain a safe service station under *Mounsey, supra*, we conclude that the cases defining the duty to warn about dangerous products are not controlling.

WILKINS, J. (concurring). One may fairly conclude that some customers would reasonably have interpreted a mini-serve sign as the equivalent of a self-service sign. The sign thus increased the likelihood that certain customers would leave their vehicles to pump gas. The question is whether, as a matter of law, Arco's failure to erect a sign warning customers to be on guard against other vehicles did not unreasonably increase the risk of injury caused by the improper operation of other vehicles on the premises. I agree with the court that the evidence did not present a jury question.

Conclusions such as no "proximate cause" or the absence of "reasonable foreseeability" help to describe the result, but they do little or nothing to explain the considerations that led to those conclusions. In my view, the risk of injury to a customer from the negligent operation of another vehicle on the premises of a self-service station is inherent and obvious. There is no duty to warn of such a danger.

ABRAMS, J. (dissenting). I dissent from the result reached by the court. The court assumes that Arco was negligent in failing to post the sign an "attendant will pump gas," but then concludes that any negligence on the part of Arco was not the proximate cause of Lloyd Young's accident.[1] I do not believe the court needs to assume negligence because it is clear, on the

[1] I agree with the court's statements of our standard of review. In reviewing the denial of the motion for judgment notwithstanding the verdicts, we must consider whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). See *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). Moreover, whether a particular warning, or whether the omission of a particular warning, satisfies the duty to convey the nature and extent of the danger "is almost always an issue to be resolved by a jury; few questions are 'more appropriately left to a common sense lay judgment than that of whether a written warning gets its message across to an average person.' *Ferebee* v. *Chevron Chem. Co.*, 552 F. Supp. 1293, 1304 (D.D.C. 1982)." *MacDonald* v. *Ortho Pharmaceutical Corp.*, 394 Mass. 131, 140, cert. denied, 474 U.S. 920 (1985). It does not appear, however, that the court applied these principles.

basis of our cases defining the duty of a landowner to maintain premises in a reasonably safe condition and the duty of a seller of a product to warn of dangers inherent in the use of its product, that Arco violated its duty to warn the plaintiffs' son concerning the manner in which mini-serve gasoline was to be distributed.[2] See *Back* v. *Wickes Corp.*, 375 Mass. 633, 640-641 (1978); *Schaeffer* v. *General Motors Corp.*, 372 Mass. 171, 173-174 (1977); *Mounsey* v. *Ellard*, 363 Mass. 693, 708-709 (1978). But, more importantly, I believe that the risk that a customer who left his automobile to pump gas would be injured by a third party was reasonably foreseeable from Arco's negligent failure to warn or instruct its customers as to the meaning of mini-serve.

The Restatement (Second) of Torts § 442B, at 469 (1965), states that, "[w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability . . . ." The court has said that a first wrongdoer will not be excused from liability by the act of a third party who intervenes and contributes to the injury, if the act should have been foreseen.[3] *Jesionek* v. *Massachusetts*

---

[2] I do not agree with the court's conclusion that the cases defining the duty to warn about dangerous products are not controlling on the facts of this case. See *ante* at 843 n.5. The court defines the duty imposed in duty to warn cases very narrowly, by stating that a manufacturer need only warn of the dangers of a *product*. *Id.* We have stated that a manufacturer also must warn about *use* of a product in a particular setting. See *Back* v. *Wicks Corp.*, 375 Mass. 633, 640-641 (1978); *Schaeffer* v. *General Motors Corp.*, 372 Mass. 171, 173-174 (1977). I believe our law concerning the duty to warn is instructive in this case because, if a product is dispensed on particular premises, part of the analysis as to whether the premises are reasonably safe is whether the distribution of the product is occurring in a manner which does not jeopardize the safety of the area. If there are dangers inherent in the use or distribution of a particular product, in order to maintain reasonably safe premises, a manufacturer or seller must either design around these dangers or warn and instruct users to beware of the possible dangers.

[3] The Restatement (Second) of Torts § 302A comment c (1965) states that "the actor is required to know that there is a certain amount of negligence in the world, and that some human beings will fail on occasion to behave as a reasonable [human being] would behave."

*Port Auth.*, 376 Mass. 101, 105 (1978). See *Mullins* v. *Pine Manor College*, 389 Mass. 47, 62 (1983). The scope of Arco's duty and the act which should have been foreseen does not include a duty to foresee this particular accident, but it does include a duty to act reasonably to protect customers against the possibility of being struck by a motor vehicle. In the circumstances of this case, it was reasonably foreseeable that an accident would happen at a mini-serve pump because customers did not understand that they should not get out of their vehicles — either to pump gas or to seek out a gas station attendant to find out what mini-serve meant. Evidence was presented that customers did not understand what mini-serve meant because these stations were extremely uncommon at the time of this accident. Santilli testified that many customers pumped their own gas at the mini-serve pump because they thought mini-serve meant self-serve. Moreover, Santilli stated that, until he entered the gas station business, he did not appreciate the hazards associated with other vehicles at a gas station. The plaintiffs' son, by pumping his own gas, was exposed to the foreseeable risk of harm that he would be injured by another vehicle at the gasoline station. In order to reach its result the court assumes that the sign an "attendent will pump gas" would not have been read or heeded. On the contrary, Arco's failure to give any warning or instructions "permits the inference that it would have alerted the user to the danger and forestalled the accident." *Wolfe* v. *Ford Motor Co.*, 6 Mass. App. Ct. 346, 349 (1978). Thus, the conduct of Arco, in failing to supply a sign, was a substantial factor in bringing about the harm which occurred here.

While there is always some risk of harm at a gas station, be it from the presence of a highly flammable substance or from the presence of many vehicles in a small area, the failure to warn or instruct customers concerning the mini-serve program increased this risk of the harm which incurred here. Customers were outside of their vehicles and exposed to these dangers in a situation where they could have remained in their vehicles and waited for an attendant, had they realized that the attendant pumped the gas. The law does not require that

the "precise manner in which the harm occurs . . . be foreseen."
*Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 798 (1987).
See *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass.
6, 12 (1983); *Luz* v. *Stop & Shop, Inc.*, 348 Mass. 198, 204
(1964). Moreover, the particular manner in which the harm
occurs is not material if the general danger to which the plaintiff
was exposed should have been foreseen by the defendant.
*Lawrence* v. *Kamco, Inc.*, 8 Mass. App. Ct. 854, 858 (1979).
Because questions of causation, proximate and intervening,
present issues for the jury to decide, see, e.g., *Michnik-Zilber-
man, supra* at 12; Mullins, *supra* at 58, I believe the court
errs by deciding, as a matter of law, that any negligence of
Arco was not the proximate cause of the plaintiffs' injuries.
On the basis of our cases, the issue of proximate cause presented
an issue for the jury to decide. See, e.g., *Solimene* v. *B. Grauel
& Co., KG*, 399 Mass. 790 (1987); *Michnik-Zilberman, supra;
Mullins* v. *Pine Manor College*, 389 Mass. 47 (1983); *Jesionek*
v. *Massachusetts Port Auth.*, 376 Mass. 101 (1978); *Luz* v.
*Stop & Shop, Inc., supra; Wallace* v. *Ludwig*, 292 Mass. 251
(1935); *Lane* v. *Atlantic Works*, 111 Mass. 136 (1872).

The court also concludes that Arco had no duty to warn its
customers to be alert for other automobiles in the area because
the danger posed by automobiles should have been obvious to
the plaintiffs' son. I disagree. Again, we must view the evi-
dence on this issue in the light most favorable to the plaintiffs.
*Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). As already
noted, Santilli stated that, prior to entering the gas station
business, he did not appreciate the dangers posed by other
vehicles at the gas station. Moreover, in training employees
in the safe dispensing of gas, Arco instructed them to be alert
for vehicles in the area. Finally, a warning of this sort was
included on the self-service pumps. Arco did not consider the
danger presented by other vehicles to be so obvious that it was
unnecessary to warn both employees and the public. Cf. *Kalivas*
v. *A.J. Felz Co.*, 15 Mass. App. Ct. 482, 487 (1983) (jury
could find that a warning given to the public which was not
as extensive as that given to salesmen rendered product defec-

tive). Given that Arco itself realized that individuals dispensing gas may not appreciate the dangers posed by other automobiles, it is also error for the court to take this issue from the jury and decide, as a matter of law, that the dangers associated with other automobiles in the gas station are obvious.

An obvious or a known danger requires not only knowledge of the activity or the condition, but also appreciation of the danger, including the probability and the gravity of the threatened harm.[4] See Restatement (Second) of Torts § 343A comment b (1965). It is important to look to the exposure an individual has had with the particular circumstances to determine whether the individual is "fully conscious of the dangers that are present." *Mullins* v. *Pine Manor College*, 389 Mass. 47, 52 (1983). Clearly, the victim's exposure to the dangers presented was minimal. He had never pumped gas before. He was not old enough to drive. In fact, he was having difficulty replacing the gas cap at the time the accident occurred. Whether the victim could appreciate the dangers creates an issue for the jury, not the court.

In addition, as comment f of the Restatement (Second) of Torts § 343A (1965) notes, there are situations in which a possessor of land should anticipate that a dangerous condition will cause harm to another regardless of the obviousness of the danger. "Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A comment f, at 220 (1965). In this case, even if the danger posed by other vehicles in the gas station was obvious, the plaintiffs' son was distracted by the difficulty he was encountering replacing the gas cap and was not aware of the need to protect himself from the danger.

---

[4] The court has rejected the rule that, where a product is obviously dangerous, a manufacturer cannot be found liable. *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 881 (1978). "The law, we think, ought to discourage misdesign rather than encouraging it in its obvious form." *Id.*, quoting *Palmer* v. *Massey Ferguson, Inc.*, 3 Wash. App. 508, 517 (1970).

Santilli's testimony reflects that he was aware that the plaintiffs' son did not appreciate the danger posed by others in the gas station. While a general understanding that motor vehicles are dangerous might be obvious as a matter of law, the danger presented by pumping gasoline and thereby becoming involved in an automobile accident is not so obvious that it does not even present an issue for the jury. The jury could properly have based their finding of negligence on this ground alone.[5] I dissent.

---

[5] According to the principles expressed in *Mounsey* v. *Ellard*, 363 Mass. 693, 708 (1978), Arco had the duty to maintain its property in a reasonably safe condition, in view of all the circumstances. This test of "reasonableness in all the circumstances" permits the jury to determine what burdens of care are unreasonable in light of the expense and difficulty imposed on an owner balanced against the probability and seriousness of the foreseeable harm to others. *Id.* at 709. Because the evidence concerning the omissions of warnings was sufficient to permit the jury to conclude that Arco had violated its duty to maintain its property in a reasonably safe condition, I do not believe it is necessary to reach the other evidence of Arco's negligence, including the evidence involving the design of the gas station.