USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2056

 DEBRA A. JONES,

 Plaintiff, Appellant,

 v.

 WALTER KIDDE PORTABLE EQUIPMENT, INC.,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. George A. O'Toole, Jr., U.S. District Judge]

 Before

 Stahl, Circuit Judge,
 
 Aldrich and Bownes, Senior Circuit Judges.
 
 
 

 Steven B. Rotman with whom H. Bissell Carey, III, Clive D.
Martin and Robinson & Cole were on brief for appellant.
 Peter L. Puciloski with whom Susan A. Hartnett, Richard A.
Sawin, Jr. and Sugarman, Rogers, Barshak & Cohen were on brief for
appellee.

 
July 19, 1999

 ALDRICH, Senior Circuit Judge. Plaintiff Debra A. Jones
fell in February of 1989 and injured her right elbow. Because of
persistent pain and restricted movement she was operated on by Dr.
Robert Leffert at the Massachusetts General Hospital in October of
1990. Surgery required a tourniquet around the upper arm and there
was used a Kidde Model 400 manufactured by defendant Walter Kidde
Portable Equipment, Inc. The 400 worked properly and had no bad
effects on plaintiff, but, unfortunately, the surgery was
unproductive. On December 10, 1991 Dr. Leffert operated a second
time, again using a 400. All apparently went well with the 400,
but upon its removal and plaintiff's recovery from general
anesthesia, it was found that her arm, commencing immediately below
where the 400 cuff had been applied, and her hand were numb and
paralyzed. Her ultimate continuing condition was some restricted
arm movement and, allegedly, substantial pain. No objection has
been raised to the size of the jury's verdict: $700,000.
 In due course plaintiff sued defendant in the
Massachusetts Superior Court and defendant removed to the District
Court. The case was tried to a jury, and a claim under Mass. Gen.
Laws ch. 93A was simultaneously tried to the court.
 On January 24, 1997 the jury answered special questions,
some for plaintiff, one for defendant. In a memorandum dated July
7, the court decided in the defendant's favor on the Chapter 93A
claim. On July 18, 1997, it entered judgments for plaintiff and
defendant according to the jury's and its own Chapter 93A findings. 
In response to a motion filed June 3, on August 12, 1998, supported
by a Memorandum, the court vacated the earlier judgment favoring
plaintiff and ordered judgment for the defendant on all common law
counts.
 The Issues
 The court sent the case to the jury in a number of
special questions. We can best put it now by consolidating them:
 1. Was the tourniquet's design negligent, or
unreasonably dangerous? This was plaintiff's principal claim. The
jury answered "No." Not appealed.
 2. Did defendant negligently fail to furnish adequate
warning of foreseeable and unreasonable risks in the tourniquet's
design? The court vacated the jury's affirmative answer as
evidentially unsupported. Plaintiff appeals.
 3. Did defendant breach an express warranty? Again, an
affirmative answer was vacated. Plaintiff appeals.
 Nondisclosure
 If the wording of questions 1 and 2 is perhaps facially
inconsistent, the court's charge was clear. It was in accord with
the common principle that there may exist a duty to warn of dangers
inherent in a product even if it has not been defectively designed. 
See, e.g., Schaeffer v. General Motors Corp., 372 Mass. 171, 174,
360 N.E.2d 1062, 1065 (1977); Knowlton v. Deseret Medical, Inc.,
930 F.2d 116, 118 (1st Cir. 1991). The court instructed the jury
to consider the severity and the likelihood of any unapparent risk,
and the sophistication of the users: "[T]he seller must warn only
of those risks not likely to be known to members of that
profession." This charge, quite properly, was not objected to by
the plaintiff. It is interesting, however, to compare it with part
of her argument to the jury, doubtless relevant to question 1,
supra: "It's very unsafe. Its unsafety, its propensity to
malfunction, has been documented for years." On this basis, how
much warning was needed to sophisticated professionals of
publically documented deficiencies?
 Before noting the disclosure that defendant itself made,
we pause to state briefly the details of plaintiff's case. Medical
testimony, including the fact that plaintiff's nerve injury began
at the appropriate tourniquet location, by a process of eliminating
other causes, led to a medical probability that plaintiff's injury
was caused by undue pressure from a malfunctioning tourniquet. 
According to a well-qualified engineering expert, the malfunction
was due to a foreign particle temporarily holding open the gas
supply valve and another blocking the safety relief valve. The
ever-increasing unwanted pressure ultimately blew away the
particles, and the pressure, and gauge, returned to normal. 
Testifying by memory of his usual practice, the anesthesiologist,
Dr. Shapiro, had an extensive list of medical observations that he
repeatedly made and recorded, and he included, without recording
unless changed, the tourniquet pressure. By their process of
eliminating other possibilities, plaintiff's experts concluded that
her injury occurred between two of these checks.
 What had not been disclosed? We look first at
plaintiff's own argument to the jury. "[T]he debris is there. 
They know it is there. They even say it's there on the tourniquet
itself." If sophisticated doctors could be thought not to know
that an impaired function caused by such debris could result in
uncontrolled pressure, and that excess pressure could lead to nerve
damage, there appeared in a box, in capital letters, at the very
outset of defendant's Owner's Manual, the following:
 IMPORTANT! IMPROPER USE COULD CAUSE PARALYSIS
 AND NERVE DAMAGE. CUFF LOCATION, PRESSURE AND
 DIRECTION OF APPLICATION MUST BE ESTABLISHED
 OR APPROVED BY THE RESPONSIBLE SURGEON IN
 CHARGE. CUFF PRESSURE MUST ALSO BE MONITORED
 CONTINUOUSLY DURING USE.

Turn, then, to a later page:
 TO USE TOURNIQUET DURING SURGERY

 . . . . 

 IMPORTANT! MONITOR CUFF PRESSURE CONTINUOUSLY
 DURING USE.
 Pressure will remain at the selected setting
 during the entire procedure unless manually
 changed. [Directions for changing]

 NOTE: SHOULD A LEAK EVER DEVELOP IN THE
 TOURNIQUET VALVE DURING USE, THE SET PRESSURE
 WILL RISE AT LEAST 150 MM HG. BEFORE PRESSURE
 RELIEF OPERATES.

 INSTRUCTIONS IN THIS MANUAL FOR MAINTENANCE
 MUST BE FOLLOWED TO MINIMIZE LEAK POTENTIALS.

In addition, an instruction on the side of the tourniquet's metal
shell says, similarly, "[d]uring use monitor pressure gauge
continuously for pressure stability." Passing for the moment the
sentence in simple type in the second quotation from the Owner's
Manual, what is clearer than the fact that improper pressure could
cause nerve damage and that this might occur in so short a time
that continuous monitoring (of the gauge) is "IMPORTANT!"? This
was far different from an unexplained "Recommended." Cf. Wolfe v.
Ford Motor Co., 6 Mass. App. Ct. 346, 350-51, 376 N.E. 2d 143, 146
(1978).
 For plaintiff to claim non-disclosure she is obliged to
say that the user was not told that a malfunction could occur in
spite of continuous checking, meaning that "continuously" permitted
totally undefined interruptions for the anesthesiologist's medical
observations, and recording, of the patient's physical
manifestations. These duties clearly would require several minutes
-- there was a suggestion of five. The very thought that this
would be continuous monitoring is absurd. The user was warned
100%.
 Express Warranty
 Alternatively, plaintiff says that the sentence in simple
type in the second warning, supra, constituted an express warranty
because it was an "affirmation of fact or promise." Mass. Gen.
Laws ch. 106, 2-313(1)(a). Standing alone, that is true, but
language does not stand alone. See Mass. Gen. Laws ch. 106, 2-
316(1). A possible, and reasonable, reading of this sentence is
a simple statement that the tourniquet was designed to maintain
throughout the originally set pressure. Where the relied on
statement is flanked with another, IMPORTANT advice that something
may go wrong and instructions how to guard against it, we hold as
matter of law that the combination cannot be read as warranty that
the event will not happen.
 Chapter 93A
 Finally, plaintiff's claim under Chapter 93A has no basis
short of a breach of warranty. It, accordingly, fails.
 Affirmed.